**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA MATTHEWS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IKEA NORTH AMERICA SERVICES LLC, IKEA US RETAIL LLC, IKEA PROPERTY, INC., IKEA HOLDING US INC., INGKA HOLDING OVERSEAS B.V., and INGKA HOLDING B.V.,<br><br>Defendants. | Civil Action No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lisa Matthews ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to herself and upon information and belief as to all other matters, brings this class action against defendants IKEA North America Services LLC, IKEA US Retail LLC, IKEA Property, Inc., IKEA Holding US Inc., INGKA Holding Overseas B.V., and INGKA Holding B.V. (collectively "IKEA" or "Defendants").

**INTRODUCTION**

1.      This lawsuit arises from IKEA's practice of increasing the prices it charged consumers to pass on the tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*. Plaintiff alleges that because these tariffs were unlawful, IKEA's failure to refund these tariff payments to the proposed class was also unlawful and caused consumers to pay higher prices for IKEA goods than they otherwise would have.

2.      A tariff is a tax the federal government imposes on goods imported into the United States from foreign countries. The importer must pay the tariff when the goods enter the country and almost always recoups that amount by charging its customers higher prices. In other words, the consumer, not the importer, is the one who paid the unlawful IEEPA tariffs.

3.      Under the refund mechanism put in place after the IEEPA tariffs were determined to be unlawful, the importer holds the sole legal right to seek reimbursement from the government for an unlawfully collected tariff.

4.      Thousands of companies have already filed actions with the Court of International Trade ("CIT") seeking recovery of the full amount of their IEEPA tariff obligations, and the CIT has already ordered that refunds (plus interest) be issued to entitled importers regardless of whether the companies filed a lawsuit with the CIT. Shortly thereafter, the U.S. Customs and Border Protection ("CBP") released a Consolidated Administration and Processing of Entries (CAPE) tool within the Automated Commercial Environment Secure Data Portal (ACE Portal) to process importers' tariff refund requests.

5.      In contrast, the consumers who ultimately paid these unlawful tariffs, like Plaintiff and proposed Class members, have no statutory right of action before the CIT to pursue and collect a refund for the illegal tariffs they paid.

6.      The purpose of this lawsuit is to allow Plaintiff and the Class to recover the unlawful IEEPA tariff overcharges they paid when purchasing imported IKEA products. Accordingly, Plaintiff and the Class seek monetary damages in the amount of the unlawful IEEPA duties passed through to Plaintiff and the putative Class in the form of elevated product prices. Plaintiff and the Class also seek pre- and post-judgment interest, reasonable attorneys' fees and costs, and any other relief this Court deems proper.

## PARTIES

### A. Plaintiff.

7.      **Plaintiff Lisa Matthews** is a person and individual consumer who, at all times material hereto, was a citizen of South Carolina. Plaintiff purchased IKEA products from both the IKEA website and physical stores that, upon information and belief, were impacted by the unlawful IEEPA tariffs.

8.      Upon information and belief, absent the price increases implemented by IKEA in response to the unlawful IEEPA tariffs, Plaintiff would have paid less for these products.

**B. Defendants.**

9.     Defendant **IKEA Holding US Inc.** is a Delaware corporation with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. Defendant IKEA Holding US Inc. is a subsidiary of INGKA Holding Overseas B.V.

10.     Defendant **IKEA North America Services, LLC**, is a Delaware corporation with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. Among other things, Defendant IKEA North America Services LLC operates the IKEA website in the U.S. On information and belief, IKEA North America Services LLC is one of the entities entitled to tariff refunds as the importer of record of IKEA's goods and products.

11.     Defendant **IKEA Property, Inc.** is a Delaware corporation with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. IKEA Property, Inc. is the sole member of IKEA US Retail LLC and is a wholly owned subsidiary of Defendant IKEA Holding US Inc.

12.     Defendant **IKEA US Retail LLC** is a Delaware corporation with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. Defendant IKEA US Retail LLC is the sole member of IKEA North America Services, LLC. On information and belief, IKEA US Retail LLC is another entity entitled to tariff refunds as the importer of record of IKEA's goods and products.

13.     Defendant **INGKA Holding B.V.** is a Dutch corporation incorporated in the Netherlands. It is the largest owner of IKEA franchisees, representing around 87 percent of total IKEA sales. As of August 31, 2025, Ingka Group operated 411 IKEA stores, in 32 countries.

14.     Defendant **INGKA Holding Overseas B.V.** is a Dutch corporation incorporated in the Netherlands with its headquarters at Bargelaan 20, 2333CT, Leiden, Netherlands. Defendant INGKA Holding Overseas B.V. is a subsidiary of INGKA Holding B.V.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over the subject-matter of this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act

3

("CAFA"), provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed Class, any member of the proposed Class is a citizen of a state different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are more than $5,000,000.00 in the aggregate, exclusive of interest and costs.

16.     The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged are part of the same case or controversy.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, at all times relevant to the Complaint, Defendants' U.S. headquarters are in this District. Defendants also transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce described in this Complaint was carried out in this District.

18.     This Court has personal jurisdiction over Defendants because, *inter alia*, IKEA: (a) transacted business throughout the U.S., including in this District; (b) offered consumer products to Plaintiff and the putative Class throughout the U.S., including in this District; (c) had substantial contacts with the U.S., including in this District; or (d) engaged in conduct that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the U.S., including in this District.

19.     Defendants' activities, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on, the foreign and interstate commerce of the U.S.

## FACTUAL BACKGROUND

20.     IKEA is a multinational furniture and home goods retailer founded in Sweden that designs and sells products throughout the United States via online commerce and brick-and-mortar retail stores. IKEA is the world's largest furniture retailer, with 59 stores in the United States as of

4

February 2026. IKEA US reported $5.3 billion in sales in 2025, including $1.9 billion in online sales.[1]

22. Approximately 85% of IKEA products are manufactured outside the United States, with the main sourcing countries being China, Germany, Italy, Lithuania, and Poland. Only 15% of IKEA products sold in the United States are manufactured here.[2]

## I.    **IEEPA Tariffs.**

22. Tariffs were a major focus of then-candidate Donald Trump's 2024 presidential campaign. At that time, Mr. Trump repeatedly proposed a 10-20% percent universal tariff on all goods entering the United States, as well as a 60% tariff on goods imported from China.[3]

23. Mr. Trump continued touting tariffs as president-elect. In the weeks following his election, he stated that he would sign Executive Orders to impose tariffs of 10% and 25% respectively on China and Mexico, going into immediate effect his first day in office.[4]

24. While the incoming Trump administration promoted tariffs as a way to raise revenue and strengthen American manufacturing, experts predicted that the tariffs would significantly raise the prices of imported goods for American consumers. According to the National Retail Federation, a retail trade group, the proposed 10% universal tariffs and 60% tariff on Chinese goods would reduce American consumers' spending power by between $46 billion and $78 billion annually.[5]

---

[1] *IKEA U.S. releases FY25 Annual Summary and announces four new stores planned for 2026,* Feb. 17, 2026, https://www.ikea.com/us/en/newsroom/corporate-news/ikea-u-s-releases-fy25-annual-summary-and-announces-four-new-stores-planned-for-2026-pubf0e047b0/ (last accessed May 14, 2026).

[2] Helen Reid and Greta Rosen Fondahn, *IKEA to ramp up US production as tariffs bite*, REUTERS, Dec. 5, 2025, https://www.reuters.com/business/retail-consumer/ikea-ramp-up-us-production-tariffs-bite-2025-12-05/ (last accessed May 14, 2026).

[3] Jeff Stein, *Donald Trump is preparing for a massive new trade war with China*, WALL ST. J., Jan. 27, 2024, https://www.washingtonpost.com/business/2024/01/27/trump-china-trade-war/ (last accessed May 14, 2026)

[4] https://truthsocial.com/@realDonaldTrump/posts/113546215408213585; https://truthsocial.com/@realDonaldTrump/posts/113546215051155542.

[5] National Retail Federation, *Trump Tariff Proposals Could Cost Americans $78 Billion in Annual Spending Power, According to NRF Study*, Nov. 4, 2024, https://nrf.com/media-

25.     Speaking to CNN after the 2024 election, Jesper Brodin, the CEO of INGKA Holding B.V., the largest IKEA franchisee, stated, "Tariffs make it more difficult for us to maintain the low prices and be affordable for many people, which in the end is our goal."[6]

26.     In February 2025, President Trump began issuing a series of Executive Orders to impose tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. According to the Trump administration, these tariffs were authorized by the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1708.

27.     Enacted in 1977, the IEEPA authorizes the president to exercise certain economic powers after declaring the existence of an "unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a).

28.     The first major use of the IEEPA was in 1979 when President Jimmy Carter issued Executive Order 12170 to freeze Iranian government assets in response to the hostage crisis. Since that time, the IEEPA has served as the legal basis for imposing sanctions against countries such as North Korea, and for targeting terrorists and other non-state actors.

29.     Under the supposed authority of IEEPA, President Trump issued Executive Order 14257, which imposed tariffs as high as 145% on imports from China, and a baseline 10% tariff on nearly all imports to the U.S. Importantly for IKEA, by April of 2025 those tariffs included a 15% tariff on goods imported from the European Union and 20% on goods imported from Vietnam, two major sourcing hubs for IKEA.

30.     On May 28, 2025, the United States Court of International Trade ("CIT") determined that President Trump's tariffs "exceeded any authority" granted to him by the IEEPA.[7]

---

center/press-releases/trump-tariff-proposals-could-cost-americans-78-billion-annual-spending (last accessed May 14, 2026).

[6] Chloe Berger, *CEOs are warning Trump tariffs will hit consumers: 'Higher prices are not helpful,'* Fortune, Nov. 27, 2024, https://fortune.com/2024/11/27/ceos-warning-trump-tariffs-will-raise-prices-for-consumers-best-buy/ (last accessed May 14, 2026).

[7] Tony Romm and Ana Swanson, *Trump Tariffs Ruled Illegal by Federal Judicial Panel*, N.Y.

The Federal Circuit Court of Appeals upheld the ruling in August 2025.[8]

31.    On February 20, 2026, the U.S. Supreme Court invalidated all IEEPA-based tariffs, holding that the IEEPA did not authorize the president to unilaterally set tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. ____ (2026) (slip op. at 20).

32.    President Trump subsequently issued an Executive Order terminating the IEEPA Tariffs.

33.    On February 22, 2026, CBP, the federal entity responsible for collecting foreign duties, issued CSMS #67834313, announcing that it would halt the collection of all duties imposed pursuant to IEEPA at 12:00 a.m. E.T. on February 24, 2026.

34.    While the IEEPA tariffs were in place, CBP collected $30 billion in duty revenue in January 2026 alone, and more than $124 billion in total, the overwhelming majority of which was passed on to American consumers in the form of higher prices.

**II.    IKEA Adapts to the IEEPA Tariffs**

35.    IKEA's low-cost furniture has won it legions of fans around the world. But the size and scale of President Trump's IEEPA tariffs have negatively impacted IKEA's local customers.

36.    IKEA is a major importer of consumer goods into the United States, with approximately 85% of products sold in the United States being manufactured abroad. Throughout the Class Period, IKEA paid IEEPA tariffs to the CBP, and IKEA passed on the tariff burden to consumers in the form of higher prices. Indeed, in June 2025, Tolga Öncü, INGKA Retail Manager at INGKA Group, the company that operates most of the IKEA stores around the world, told CNBC that despite prior efforts to "absorb" the impact, IKEA was not "immune" to the higher tariffs and was passing some of them on to consumers like Plaintiff and Class members.[9]

---

TIMES, May 28, 2025, https://www.nytimes.com/2025/05/28/business/trump-tariffs-blocked-federal-court.html (last accessed May 14, 2026).

[8] Kevin Breuninger, *Most Trump tariffs ruled illegal by appeals court, dealing major blow to trade policy*, CNBC, Aug. 29, 2025, https://www.cnbc.com/2025/08/29/trump-trade-tariffs-appeals-court-ieepa.html (last accessed May 14, 2026).

[9] Anniek Bao, *How Ikea is doubling down on price cuts to attract cost-conscious consumers*, CNBC, June 25, 2025, https://www.cnbc.com/2025/06/26/how-ikea-is-doubling-down-on-price-

37.     In the ensuing months, IKEA continued to increase prices on products to offset costs related to the illegal IEEPA tariffs. For example, IKEA increased the price of certain sofas, like the Uppland sofa, which rose $50 in August 2025, according to archived internet pages. Likewise, IKEA increased prices for bedroom sets, like a three-piece oak bedroom set, which IKEA increased by $100 in July 2025. And in September 2025, IKEA officials again conceded that U.S. consumers would be impacted by the tariffs, stating "[T]ariff increases *will impact* our prices in the United States."[10]

38.     Numerous Reddit posts during this time detail IKEA customers' surprise and frustration at sudden price increase that were purportedly due to tariffs. For example, in one post titled "Sudden price increase?" on the /r/IKEA subreddit, a user remarked how the Vesken Cart went from $10.66 to $17.99, an increase of 80%, in just one week. The post moderator replied, noting that tariffs "can flow through to retail prices."[11]

39.     Other customers noted how the prices of certain products had spiked since the implementation of the tariffs. In a post titled "Major price increases today" one redditor stated, "I have a screen shot of the Godishus wardrobe from May 3 - $149.99. When I looked at it on the website a couple of weeks back, it was the same price. Today it's $199.99."[12]

40.     In another thread titled "Prices now vs a few months ago", a redditor noted that the Storemolla 8 drawer dresser was priced at $499 on July 8, 2025, compared to $599 at the end of 2025, and commented, "Tariffs sure but this is a bit extreme in my view for Ikea."[13]

---

cuts-to-attract-cost-conscious-customers.html (last accessed May 14, 2026).

[10] Michael Grothaus, *Ikea in the crosshairs as Trump adds 50% furniture tariffs*, FAST COMPANY, Sept. 26, 2025, https://www.fastcompany.com/91411567/ikea-in-the-crosshairs-as-trump-adds-50-furniture-tariffs (last accessed May 15, 2026).

[11] https://www.reddit.com/r/IKEA/comments/1na7qxh/sudden_price_increase/ (last accessed May 14, 2026).

[12] https://www.reddit.com/r/IKEA/comments/1n8go1n/major_price_increases_today/ (last accessed May 14, 2026).

[13] https://www.reddit.com/r/IKEA/comments/1or1uc8/prices_now_vs_a_few_months_ago/ (last accessed May 15, 2026).

41.     The anecdotal redditor comments are supported by Plaintiff's experiences, which illustrate IKEA's unlawful tariff-driven price increases. For example, in July 2025 Plaintiff Matthews purchased the SMASTAD loft bed for $859.00. Upon information and belief, the price for the same SMASTAD loft bed was lower prior to the tariffs.

42.     Thus, as a direct result of IKEA's tariff pass-through pricing, Plaintiff and the putative Class have paid more for tariffed goods than they would have absent the unlawful IEEPA tariffs-related price increases.

### III.    Forecasted Tariff Recoveries.

43.     In the wake of the Supreme Court's February 2026 decision in *Learning Resources*, thousands of importers filed cases in the CIT to recover tariff refunds from the government.

44.     On March 4, 2026, Judge Richard Eaton ruled that "all importers of record" were "entitled to benefit" from the Supreme Court's ruling that struck down the IEEPA tariffs. *Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21. The Court ordered CBP to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to IEEPA duties," and ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *Id*. at 2–3. As of March 4, the CBP estimated that there were approximately 53 million entries subject to IEEPA tariffs, totaling roughly $166 billion. *Atmus*, ECF No. 31 at 6.[14]

45.     However, the CBP stated it was unable to comply with the CIT order at that time and would need at least 45 days to develop and implement a process for issuing tariff refunds to importers. *Id.* at 12.

46.     On April 20, 2026, the CBP launched the first phase of the Consolidated Administration and Processing of Entries (CAPE) tool within the Automated Commercial Environment Secure Data Portal (ACE Portal) that allows for the processing of tariff refund

---

[14] A tariff entry is the official record of imported goods submitted to the CBP for the purpose of calculating and collecting tariffs on those goods. An unliquidated entry has been submitted to CBP but has not yet been reviewed or finalized. A liquidated entry has been reviewed and finalized and is considered complete.

requests.[15] The first wave of tariff refunds were expected to reach some importers by May 12, 2026.[16]

47.    However, those refunds (plus interest) only may be issued to entitled importers of record, notwithstanding the fact that researchers observed a "full pass-through" of tariff costs to consumers.[17] Indeed, state officials from around the country have expressed "grave concerns" about the tariff refund process, calling for transparency and accountability in order for consumers to recoup their payments.[18] Few companies have confirmed that they will return any tariff refunds they receive back to their customers.[19]

48.    As a result, this lawsuit seeks to ensure that Plaintiff and the putative Class recover monetary damages for the tariff overcharges they paid pursuant to the illegal IEEPA tariffs.

## CLASS ALLEGATIONS

49.    Plaintiff brings this action on behalf of herself, as representative of the Class defined below, pursuant to Federal Rule of Procedure 23, and seeks certification of the following nationwide lass:

> All persons in the United States who purchased IKEA products at inflated prices charged by IKEA because of the unlawful IEEPA tariffs

---

[15] U.S. Customs and Border Protection, *CSMS #68315804 Consolidation Administration and Processing of Entries (CAPE) for IEEPA Refunds*, Apr. 20, 2026, https://content.govdelivery.com/accounts/USDHSCBP/bulletins/4126a9c (last accessed May 15, 2026).

[16] Elizabeth Schulze, *First wave of tariff refunds will hit some businesses tomorrow*, ABC NEWS, May 11, 2026, https://abcnews.com/Business/wave-tariff-refunds-hit-businesses-tomorrow/story?id=132854062 (last accessed May 16, 2026).

[17] Ron Mau and Tucker Smith, *Effects of realized tariff changes on PCE prices peaked in first quarter 2026*, FED. RESERVE BANK OF DALLAS, May 5, 2026, https://www.dallasfed.org/research/economics/2026/0505-mau (last accessed May 15, 2026).

[18] Alison Durkee, *Trump's Tariff Refund Process Sparks 'Grave Concerns' About Consumers getting Money Back, State Treasurer Cohort Says*, Forbes, May 12, 2026, https://www.forbes.com/sites/alisondurkee/2026/05/12/trumps-tariff-refund-process-sparks-grave-concerns-about-consumers-getting-money-back-state-treasurer-cohort-says/ (last accessed May 15, 2026).

[19] Pete Grieve, *We Asked 19 Companies if They Plan to Give Customers Tariff Refunds. Only 3 Replied*, MONEY, Apr. 22, 2026, https://money.com/companies-giving-tariff-refunds/ (last accessed May 15, 2026).

50.    Excluded from the Class are Defendants, Defendants' subsidiaries, parents, successors, predecessors, and their officers, directors, affiliates, legal representatives, and employees, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

51.    Plaintiff reserves the right to revise the above Class definition and any of the averments of facts herein based on facts adduced in discovery.

52.    **Ascertainability:** Members of the Class can be readily identified and notified in an administratively feasible manner using, among other information, Defendant's own records.

53.    **Numerosity:** While Plaintiff does not know the exact number of Class members, the number is likely to be in the tens or hundreds of thousands. Therefore, joinder of all members is impracticable.

54.    **Commonality/Predominance:** There are multiple questions of law and fact common to the Class. These questions predominate over questions that may affect individual Class members, and include:

     a.    Whether Defendants passed on IEEPA tariff-related charges to Plaintiff and the putative Class;

     b.    The amount by which Plaintiff and the putative Class were overcharged for products because of the illegal tariffs;

     c.    Whether Defendants' retention of Plaintiff's and the putative Class's payments for illegal tariff costs is unjust;

     d.    Whether Defendants acted unfairly or deceptively by charging and retaining from Plaintiff and the putative Class the illegal tariff costs; and

     e.    Whether Plaintiff and the putative Class are entitled to damages in the form of the amounts paid in increased prices that were attributable to the illegal tariffs.

55.    **Typicality:** Plaintiff's claims are typical of those of the Class. The events and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of all

other Class members because they all purchased Defendants' products at inflated prices due to the tariffs and have been injured by Defendants' wrongful failure to refund these tariffs.

56.    **Adequate Representation:** Plaintiff will fairly and adequately represent the Class and protect its interests. Plaintiff's counsel has significant experience successfully prosecuting complex class actions and possesses the necessary resources to vigorously litigate the case on behalf of the Class. Furthermore, the interest of Plaintiff and Plaintiff's counsel are fully aligned with, and not antagonistic to, the interests of Class members. Plaintiff is willing and able to dispatch the duties incumbent on a class representative to protect the interests of all Class members.

57.    **Superiority:** Class treatment is the superior method for the fair and efficient adjudication of this controversy. It will allow all Class members to prosecute their common claims, and for Defendants to defend themselves against these claims, in front of a single court simultaneously and efficiently to reach a resolution of all claims within the unnecessary duplication of effort and expense that separate actions would present. The benefits of proceeding with the class action mechanism, including providing injured persons with a method of obtaining redress for claims that might not be practicable for them to pursue individually, substantially outweigh any difficulties that may arise in the management of this case as a class action.

## CLAIMS FOR RELIEF

### COUNT I

**PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW, 73 P.S. §§201-1**

**On Behalf of Plaintiff and the Class Against All Defendants**

58.    Plaintiff realleges and incorporates by reference all preceding allegations of this complaint as if fully set forth herein.

59.    Plaintiff asserts this Count on behalf of herself and the Class pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1 *et seq.* ("UTPCPL"), which makes it unlawful to engage in unfair or deceptive acts or practices in connection with trade or commerce.

12

60.    Defendants engaged in unfair and deceptive trade practices in connection with trade or commerce by charging Plaintiff and putative Class Members unfairly increased prices for the goods and products sold in its stores due to IEEPA duties it purportedly owed to the U.S. government, which were later found to have been illegal.

61.    Defendants' shifting of those illegal tariff costs to consumers via increased prices is an unfair, deceptive, and/or unconscionable trade practice under 73 P.S. § 201-2(4)(xxi) because it is deceptive conduct creating a likelihood of confusion or misunderstanding about the value of the items Plaintiff and Class members purchased.

62.    Plaintiff and the members of the proposed Class were injured by paying more than the value they received. Defendants' unfair, deceptive, and/or unconscionable conduct was a substantial factor and proximate cause of Plaintiff's and the Class's injuries.

63.    Plaintiff and the Class have the right to bring this action on their own behalf under 73 P.S. § 201-9.2(a).

64.    As a result of Defendants' violations of the UTPCPL, Plaintiff and the Class seek actual damages, treble damages, reasonable attorneys' fees and costs, and any such other relief the Court may deem necessary to prevent Defendants from engaging in unlawful conduct under 73 P.S. § 201-9.2(a).

## COUNT II
### UNJUST ENRICHMENT
### On Behalf of Plaintiff and the Class Against All Defendants

65.    Plaintiff realleges and incorporates by reference all preceding allegations of this complaint as if fully set forth herein.

66.    Plaintiff and Class members conferred a monetary benefit on Defendants when they purchased products from Defendants at increased prices due to the unlawful IEEPA tariffs imposed by the Trump Administration that Defendants passed through to their customers.

67.    Defendants appreciated the monetary benefits that Plaintiff and Class members conferred when they purchased products at higher prices due to the IEEPA tariffs, and Defendants

13

profited from passing the tariffs on to their customers.

68.    Despite the IEEPA tariffs being declared unlawful, Defendants have not refunded Plaintiff and Class members the overcharges they paid while the tariffs where in place, nor have Defendants made any indication that they intend to refund Plaintiff and Class members.

69.    It would be unjust for Defendants to retain the overcharges paid by Plaintiff and Class members because these overcharges comprise tariff expenses that Defendants passed along to their customers, and these tariffs were illegal.

70.    Plaintiff and Class members would have expected Defendants to refund the overcharges once the tariffs were invalidated.

71.    Plaintiff and Class members suffered injury as a direct and proximate result of Defendants' decision to keep the unlawful tariff overcharges they passed along to their customers.

72.    Defendants should not be permitted to retain the benefits in the form of higher prices Plaintiff and Class members paid as a result of the illegal tariffs. Plaintiff and the Class therefore seek restitution of the benefits conferred upon IKEA in the form of their IEEPA tariff payments, the exact amount of which will be proven at trial.

## COUNT III
### MONEY HAD AND RECEIVED
### On Behalf of Plaintiff and the Class Against All Defendants

73.    Plaintiff realleges and incorporates by reference all preceding allegations of this complaint as if fully set forth herein.

74.    Defendants increased prices of their goods in order to pass along the costs of the IEEPA tariffs it paid to CBP as an importer of those goods.

75.    Plaintiff and Class members had no practical alternative but to pay the increased prices in order to purchase the goods sold by Defendants.

76.    The Supreme Court has since determined that the IEEPA tariffs were unlawful.

77.    Defendants have not refunded the unlawful overcharges to Plaintiff and the Class.

78.    Defendants should not be permitted to retain the amounts Plaintiff and Class

14

members paid above and beyond what they would have paid for the same goods absent the IEEPA tariffs. The money, the amount of which will be proven at trial, belongs to Plaintiff and the putative Class, and IKEA is obligated to return it.

79.    Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and members of the Class as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

B.    For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 29, 2026                          Respectfully submitted,

                                             */s/ Diana J. Zinser*
                                             Diana J. Zinser (PA 203449)
                                             William G. Caldes (PA 75842)

15

Jeffrey J. Corrigan*
Jeffrey L. Spector (PA 207208)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
dzinser@srkattorneys.com
bcaldes@srkattorneys.com
jcorrigan@srkattorneys.com
jspector@srkattorneys.com

Jeffrey S. Goldenberg*
Todd B. Naylor*
**Goldenberg Schneider, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com


*Attorneys for Plaintiff and the Proposed Class*

*\*Pro Hac Vice Forthcoming*

16